Argued and submitted November 20, 1998; resubmitted En Banc September 8,
reversed and remanded with instructions October 27, 1999

## GEORGE OLIVER JONES,
*Appellant,*

*v.*

## G. H. BALDWIN,
Superintendent,
Eastern Oregon Correctional Institution,
*Respondent.*

(CV96-0317; CA A99501)

990 P2d 345

John Henry Hingson III argued the cause and filed the brief for appellant.

Douglas F. Zier argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Deits, Chief Judge, and Edmonds, De Muniz, Landau, Haselton, Armstrong, Wollheim and Brewer, Judges.

ARMSTRONG, J.

Edmonds, J., dissenting.

## ARMSTRONG, J.

Petitioner appeals from the judgment denying his petition for post-conviction relief in which he claimed, *inter alia*, that he had received ineffective assistance of counsel due to trial counsel's failure to object to the trial court's answer to an inquiry from the jury in his criminal case. We conclude that the trial court's answer to the jury's inquiry about the elements of the crime of conspiracy was ambiguous and, because of its ambiguity, could have misled the jury. Trial counsel's failure to object to the ambiguous answer prejudiced petitioner in that the jury could have convicted him even though the state had failed to prove that petitioner intended to commit the criminal act that was the subject of the conspiracy, an element of the crime of conspiracy. Accordingly, we reverse the judgment of the post-conviction court.

Petitioner was charged with three counts of conspiracy to commit murder and aggravated murder. ORS 161.450; ORS 163.095(2)(a)(A); ORS 163.115. The trial court instructed the jury:

> "Oregon law provides that a person commits the crime of conspiracy if the person, with the intent to commit a crime, agrees with one or more persons to commit the crime. To establish the crime of conspiracy to commit the crime of aggravated murder or murder, the State must prove beyond a reasonable doubt the following four elements.

> "First, the crime of conspiracy occurred in Josephine County, Oregon. Two, the crime of conspiracy occurred between April 1st, 1988 and September 30th, 1989. Three, that George Oliver Jones with intent to commit the crime of aggravated murder or murder, four, agree with William Rice to commit the crime of aggravated murder of William Arnado or the murder of William Arnado or Roger Wirth.

> "The crime of conspiracy is complete when the conspiratorial agreement is entered into with the intent to commit aggravated murder or murder. *The unlawful agreement and not its accomplishment is the essence of the crime.*"[1]

---

[1] The jury received a written version of the instructions.

(Emphasis added.) During deliberations, the jury submitted a note to the court, reading as follows:

> "We are having some dispute as to the definition of the word 'intent.' Is the defendant guilty of conspiracy if he did indeed make a plan with others to kill *or* must it be proved that the defendant was definitely serious, and fully intended to go through with the plan?"

(Emphasis added.) In an off-the-record meeting with counsel for the state and petitioner,[2] the trial court decided to give the following answer:

> "The court has reviewed your question and would submit the following answer. Your question is a two-part question. The answer to part one is yes *and* the answer to part two is yes."

(Emphasis added.) The jury then convicted petitioner on all counts. His conviction was affirmed on appeal. *State v. Jones*, 126 Or App 224, 868 P2d 18, *rev den* 318 Or 583 (1994).

■■ In a post-conviction relief proceeding, the petitioner has the burden of proving the allegations in the petition by a preponderance of the evidence. ORS 138.620(2). To establish inadequate assistance of counsel under the Oregon Constitution, a petitioner must prove that counsel failed to do the things reasonably necessary to advance the petitioner's defense and that the petitioner suffered prejudice as a result. *Stevens v. State of Oregon*, 322 Or 101, 108, 902 P2d 1137 (1995). Under the Sixth and Fourteenth Amendments to the United States Constitution, denial of adequate assistance of counsel is demonstrated when a petitioner shows that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 US 668, 687, 104 S Ct 2052, 80 L Ed 2d 674 (1984). In other words, petitioner faces a two-pronged test. He must prove that his counsel failed to exercise reasonable professional skill and judgment, and he must prove prejudice as a result of that failure. *Davis v. Armenakis*, 151 Or App 66, 69, 948 P2d 327 (1997), *rev den* 328 Or 194 (1998).

---

[2] At trial, petitioner was represented by two attorneys, Farmer and Jesky. Neither petitioner nor Jesky was present when the jury's question was discussed.

■ Petitioner argues that both the trial court and the post-conviction court misunderstood the import of the jury's question. He contends that, on receipt of the answer, jurors could have decided to convict him based solely on the court's answer to the first part of the question, even though some members of the jury did not believe that he intended to go through with the planned act. The state argues in response that, when the answer is viewed in its entirety, the answer to the first part is necessarily subsumed by the answer to the second:

> "To the extent the jury's note can be interpreted to be an either/or question, the trial court's answer 'The answer to part one is yes, *and* the answer to part two is yes' (emphasis added)—plainly indicates that a finding of guilt required an affirmative finding to both questions; indeed, the jury logically could not find that [petitioner] fully intended to go through with the plan without finding that he had made a plan."

The problem with the state's response is that it focuses solely on the answer to the jury's question without considering the question to which it responded. The jury phrased its question in the *disjunctive*, so the only reasonable interpretation of its query was that it wanted to know whether it could convict petitioner if it found that he had merely agreed to a plan or whether it further had to find that he had intended to go through with it. The trial court's answer, given in the *conjunctive*, was arguably accurate to the extent that it *could* be read to mean that the jury had to find both elements. However, that answer, viewed in the context of *the jury's* question, was hopelessly ambiguous. Viewed in that context, the court's answer was that the jury did *not* have to find that defendant intended to act on the plan in order to convict him of conspiracy and that it *did* have to find that he intended to act on the plan to do that.

■ An answer, such as the one at issue here, that affirms each of two mutually exclusive alternatives is nonsensical. We cannot pretend to know how jurors made sense of that illogical answer, and it is quite probable that different jurors understood the answer differently. Thus, members of the jury who believed that petitioner had made the agreement but had not really intended to kill anyone may well

have been convinced by the court's answer to the first part of their question to believe that the agreement alone was sufficient to support a conviction.

■　　The dissent argues that the failure to object was a tactical decision that reasonable counsel could have made and, therefore, that it did not rise to the level of violating defendant's right to effective assistance of counsel. However, aside from noting the answer's succinctness, the dissent fails to explain how defendant could possibly have benefited from the inherently ambiguous answer. We decline to hold that reliance on incoherent jury instructions is a valid tactical decision. Relying on such instructions is more akin to entering a defendant's fate into a lottery system than to making a rational decision about trial strategy.

Competent counsel would have recognized the fatal ambiguity in the court's answer and would have called it to the court's attention.[3] Because petitioner's counsel failed to do that, his performance was deficient. However, unless it can be shown that the defense was prejudiced, that deficiency is not sufficient to reverse the judgment of the post-conviction court. "Not all lapses of professional skill and judgment entitle a defendant to post-conviction relief. Instead, 'only those acts or omissions by counsel which have a *tendency to affect the result* of the prosecution can be regarded as of constitutional magnitude[.]' " *Stevens*, 322 Or at 110 (quoting *Trujillo v. Maass*, 312 Or 431-35, 822 P2d 703 (1991) (emphasis and brackets in original).

In this case, the prejudice is readily apparent. Petitioner's defense was that, although he had engaged in conversations in which he had agreed to kill two people, it was all just "bar talk" and he never intended to kill anyone. It is possible that at least some members of the jury could have concluded that petitioner had entered into a superficial "agreement" but that he did not mean to kill anyone. Those

---

[3] It is not difficult to formulate a simple, and correct, response to the jury's question. The jury could have been told:

"The court answers your question as follows: To convict defendant of conspiracy, you must find that he made an agreement to commit the charged crimes and that he intended to perform the agreement."

jurors may, then, have leaned toward acquittal before receiving the court's answer to their question. It is further possible that they believed that only the first part of the court's answer applied to their concern and, therefore, that they ignored the second part.

That possibility is supported by a local news videotape and transcript that were admitted as evidence in the post-conviction case, in which jurors complain that they were confused by the trial court's instructions and state that they now believed, based on the law of conspiracy, that the result should have been different.[4] Although it is possible that the jurors were simply expressing second thoughts about their decision, akin to a buyer's remorse, it is also possible that an already confused jury was made hopelessly confused by the ambiguous answer to its question. Competent counsel could have avoided that confusion, and the result of the case could well have been different. Accordingly, we conclude that petitioner was prejudiced by his counsel's failure properly to object to the court's answer.

---

[4] The transcript of the news report contains the following exchange:

"MASON [reporter]: [Juror] Shoup says jurors were also confused about the question of intent when they asked the judge in a note if they had to be convinced that Jones was actually going to carry out the killing. The answer the judge wrote back was confusing.

"SHOUP: Boy, I honestly think that the outcome would have been just exactly the opposite had the judge explained it fully, because now I know the true answer to that question. I think we were given the wrong answer. Either that or—

"MASON: Shoup says some of the jurors were so confused that deliberations broke down. * * *

"* * * * *

"MCFARLANE [jury foreperson]: I felt bad the moment we walked back in and I had to tell the judge that we the jury find the defendant guilty. I felt very bad.

"* * * * *

"MASON: McFarlane says it was confusion over the judge's handwritten note that caused him to switch from not guilty to guilty. And [that] had the judge called the jury back in to the courtroom to explain fully that intent was necessary, he would have maintained his not guilty vote."

While the news report supports the proposition that the ambiguous answer prejudiced defendant's case, it is not necessary to rely on the report to find prejudice. As explained above, the trial court's answer to the jury's question was inherently ambiguous. More importantly, it was susceptible to a construction that was much less favorable to defendant than the law allows. Thus, the answer alone is sufficient to support a finding of prejudice.

Reversed and remanded with instructions to grant post-conviction relief.[5]

**EDMONDS, P. J.,** dissenting.

The majority holds that petitioner received inadequate assistance of trial counsel, even though the record reveals that trial counsel objected to the state's request for a more amplified instruction to the jury and urged the court to give a simple "yes or no" to the questions posed. The majority's position is untenable in light of the deference given by the case law to tactical decisions by trial counsel in post-conviction relief proceedings. Accordingly, I dissent.

It is uncontested that each member of the jury was given initially a correct written instruction regarding the elements of the conspiracy crimes with which petitioner was charged. The original instructions had told the jury that the state must prove that petitioner acted "with intent to commit the crime of aggravated murder or murder" and "agreed with William Rice to commit the crime of aggravated murder of William Arnado or the murder of William Arnado or Roger Wirth." They also said,

> "The crime of conspiracy is complete when the conspiratorial agreement is entered into with the intent to commit aggravated murder or murder. The unlawful agreement and not its accomplishment is the essence of the crime."

During the jury deliberations, the jury sent a note to the trial court:

> "Your Honor,
>
> "We are having some dispute as to the definition of the word 'intent.' Is the defendant guilty of conspiracy if he did indeed make a plan with others to kill, or must it be proved that the defendant was definitely serious, and fully intended to go through with the plan?
>
> > "The Jurors"

---

[5] Because of our disposition of this first issue, we need not reach petitioner's other assignments of error.

At a hearing on a motion for a new trial, the trial court put on the record what occurred after it received the note.

"When [note] was presented to me, I had my assistant, who is here in the courtroom, contact [the prosecutor], who was at home, I believe, at the time, and also [defense lead counsel], who I believe was at his office, and we conducted a telephone conversation concerning this question. I read the question to both attorneys, we had a discussion about the question, and it was decided and I believe agreed upon that we were really talking about two questions here rather than one question. Once that was decided, there was a discussion about a possible answer. My recollection is that the State, represented by [the prosecutor], wanted more of a written explanation to go back to the jury than did [defense counsel]. [Defense counsel] basically wanted a simple 'yes' or 'no,' and I believe this is nearly a quote from what he said, that to add more, such as what [the prosecutor] was arguing would be asking or giving the jury more than what they really asked for.

"The court ultimately made the decision to make the answers simple 'yes' answers to both questions, I believe my recollection is that in principle at least there was not a dispute over the fact that there were two questions. There was not a dispute over whether or not the answer to each of the questions should be 'yes.' The dispute, if any, had to do with whether or not an additional explanation should be given."

After having his secretary type the response, the trial court "called the attorneys back a second time, * * * and it was ultimately decided that the answer that I just read would be the answer that would be taken to the jury." Accordingly, the trial court through the bailiff delivered the following note to the jury:

"Ladies and gentlemen of the jury:

"The court has reviewed your question and would submit the following answer. Your question is a two-part question. The answer to part one is yes and the answer to part two is yes."

The majority finds an ambiguity in the "yes" and "yes" answers and asserts that "[c]ompetent counsel would have recognized the fatal ambiguity in the court's answer and

would have called it to the court's attention." 163 Or App at 512. Moreover, it says, "[h]owever, aside from noting the answer's succinctness, the dissent fails to explain how the defendant could possibly have benefited from the inherently ambiguous answer." 163 Or App at 512. The majority's "Monday morning quarterback approach" is inconsistent with the case law involving tactical decisions made by trial counsel in post-conviction relief proceedings and the "real world" proposition that defense counsel often do depend on ambiguities in the law and the facts to put the state to its burden. Beyond those general observations, the purported "ambiguity" in this case is manufactured out of whole cloth when understood in context.

There is no bright-line standard for determining the adequacy of counsel under Article I, section 11, of the Oregon Constitution. Section 11 does not give a criminal defendant the right to *perfect* representation. Rather, it requires a lawyer to do those things that are reasonably necessary to diligently and conscientiously advance the defense. Inadequate assistance of counsel must involve an act or an omission of constitutional magnitude in order to afford post-conviction relief. Thus, it is unusual for an appellate court to second-guess the tactical decision of a lawyer made in the "heat of battle" while representing a criminal defendant. *Stevens v. State of Oregon*, 322 Or 101, 108, 902 P2d 1137 (1995). The strategies on how to handle a particular issue can be as varied as the number of lawyers in the courtroom. The constitution even "allows for tactical choices that backfire, because, by their nature, trials often involve risk.[1] Moreover, a risk which is foolish in a close case may be sound where the prosecution is strong and the defense weak." *Krummacher v. Gierloff*, 290 Or 867, 875, 627 P2d 458 (1981). The point is that when it comes to evaluating tactical decisions, there are no rigid rules by which appellate courts apply the general standard of reasonable professional skill and judgment. If a decision could be considered to have met that standard, even

---

[1] It is not enough to show that there was more than one course of strategy available, and the path chosen went awry or was unsuccessful. As every trial lawyer knows, there are unforeseen risks at every turn in a trial. If we were to vacate criminal convictions simply because a tactical decision turned out badly, then post-conviction relief would become a certainty in almost every case.

though it may not have been what the judges of the appellate court would have done, then the court will not second-guess trial counsel in the name of the constitution. Thus, there is a high burden that must be met by petitioner in this case to demonstrate that no reasonable counsel would have embarked on the course of strategy undertaken by his counsel at trial.

The record is clear that trial counsel made a diligent and conscientious choice about strategy after being informed of the contents of the jurors' note and listening to the prosecution's argument on how it should be answered. The trial court gave him two opportunities to be heard, the second after he had had an opportunity to reflect on his position. The majority cannot reasonably fault counsel for being uninformed or whimsical in his decision-making process. His choice to reject a more amplified answer was studied and deliberate.

We cannot divine from this record what prompted counsel's tactical choice, nor should that reality lead us to jump to the majority's conclusion. No rule of law requires defense counsel to put on the record what his inner thoughts were at the time of his choice. Of course, client confidentiality may prevent such a revelation. We do know that counsel was aware that each juror had a correct written instruction on the elements of the charge that plainly told them that there two issues they had to decide: Did the state prove that petitioner entered into a conspiracy? Did the state prove that when he entered into the conspiracy, he intended to carry out its objectives? Also, we know that the jury had been deliberating for some time before the note was delivered to the trial court. In my experience, it is a generally accepted notion in the defense bar that the longer a jury deliberates, the greater opportunity for a mistrial or an acquittal because jurors cannot agree on the requisite number of votes required for a guilty verdict. Also, we know that, for whatever reason, the prosecution wanted to add to the original instructions. Presumably, its intention was not to further the interests of petitioner.

Finally, there was the content of the note itself. The note appeared to conflate improperly the elements of a conspiratorial agreement and the intent to carry out the conspiracy. The trial court with the assistance of counsel undertook

to correct the jurors' apparent misunderstanding. It did so by first informing the jury that their "one" question was really "two questions." Surely, the majority will not fault trial counsel for agreeing to that part of the answer. Secondly, the court was faced with the dilemma of how much more to tell the jury about the duality of the elements than it already had in the written instructions given to each juror. The note in substance asked two questions: "Do we have to find that petitioner made a plan with others to kill the intended victims?" It also asked, "Must it be proven that petitioner intended to go through with the plan he had agreed to?" The court's answers to those questions were "yes" to the first question and "yes" to the second question. When the questions are understood in the context of the original instructions and the jurors' note, there is no ambiguity.[2]

The majority improperly assumes that the note is ambiguous and asks how petitioner could have possibly benefited from the answers agreed to by trial counsel.[3] Besides establishing a "straw man" to blow down with its "ambiguity" analysis, the majority asks the wrong question. The test is not whether petitioner benefited from trial counsel's strategy, but whether the choice made was a choice that a reasonable lawyer exercising professional skill and judgment could make. Consider the following scenario: Suppose that counsel believed that the prosecution's case was strong and the defense weak. Suppose that counsel believed that the jurors were in disagreement when they passed the note to the trial judge. Suppose also that the prosecution had put into evidence tape recordings that had recorded petitioner entering into an agreement to kill the intended victims. Suppose also that the only viable defense in counsel's view was that petitioner's participation was only "bar talk."[4] The note informed

---

[2] An "ambiguity" is defined as language that is susceptible to more than one reasonable interpretation. To paraphrase an oft repeated rejoinder, "what is it that you do not understand about the word 'yes?' "

[3] To the extent that the majority is concerned about the brevity of the trial court's response, it should be mindful of the admonition of one of the reputedly wisest kings in history, King Solomon, who wrote "The more the words, the less the meaning, and how does that profit anyone?" *Ecclesiastes* 6:11.

[4] In fact, the state had such evidence. The state's evidence established that petitioner conspired to murder the Josephine County Sheriff and an Internal

counsel that the jury was having "some dispute" about the element of intent. It would be reasonable under those circumstances for counsel to have believed that his closing argument had been effective. He could reasonably have decided that the note was the better choice to keep the jury on track to continue to direct its focus to the one element that had been the subject of his closing argument and in support of the only hope that petitioner had for a hung jury or a verdict of acquittal. Of course, counsel could have agreed with the state that a more amplified or clarified answer would have been helpful and that choice would also have been reasonable. But that's the point that the majority misses. There was no absence of professional skill or judgment here that would require vacating of the convictions, but only an exercise of judgment about reasonable tactical alternatives.[5]

Under the circumstances, I dissent.

Deits, C. J., and Wollheim, J., join in this dissent.

---

Revenue Service Agent. Several of his conversations were recorded via a bodywire worn by a feigned accomplice. In his testimony at trial, petitioner steadfastly denied entering into a conspiracy. However, in closing argument, counsel characterized the evidence from the tape recording as merely "bar talk" to illustrate petitioner's purported lack of intent to carry out the agreement.

[5] The majority is apparently impressed by the transcript of a television news program that was made part of the record below. In the interviews that occurred, two jurors alleged misconduct. Those arguments were raised on petitioner's motion for a new trial, a subject raised on appeal and rejected by us in *State v. Jones*, 126 Or App 224, 228, 868 P2d 18, *rev den* 318 Or 583 (1994). At the motion for a new trial, petitioner was represented by different counsel who did not raise the issue now raised by petitioner's post-conviction relief counsel. All three lawyers made differing tactical decisions arising out of the same record.