Argued and submitted December 20, 2010, affirmed June 29, 2011, petition for review denied February 2, 2012 (351 Or 545)

**STATE OF OREGON,**
*Plaintiff-Respondent,*

*v.*

**PATRICK JOSEPH MANEY,**
*Defendant-Appellant.*

Wasco County Circuit Court
0700147CR; A139661

260 P3d 547

Anne Kimiko Fujita Munsey, Senior Deputy Public Defender, argued the cause for appellant. On the brief were Peter Gartlan, Chief Defender, and Rebecca Duncan, Assistant Chief Defender, Office of Public Defense Services.

Janet A. Klapstein, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and David B. Thompson, Interim Solicitor General.

Before Brewer, Chief Judge, and Gillette, Senior Judge.

BREWER, C. J.

**BREWER, C. J.**

Defendant, who was convicted of second-degree assault, fourth-degree assault, first-degree criminal mistreatment, and harassment, asserts on appeal that the trial court erred in (1) denying his motion for a judgment of acquittal on the second-degree assault charge; (2) excluding expert testimony that defendant asserts was relevant to the second-degree assault charge; and (3) answering a clarifying question that the jury asked about that charge. We reject without discussion defendant's arguments concerning the motion for a judgment of acquittal and the proffered testimony of the expert witness. As explained below, we conclude that the trial court properly addressed the jury's question. Accordingly, we affirm defendant's convictions.

Defendant was convicted after a jury trial, so we state the facts in the light most favorable to the state. *State v. Johnson*, 342 Or 596, 598, 157 P3d 198 (2007), *cert den*, 552 US 1113 (2008). Because defendant's arguments concern only the second-degree assault charge, we describe the facts relevant to that conviction. The victim, A, was defendant's daughter, and she was 14 years old at the time of the assault. Several days before the assault, on June 15, 2007, A and her sister K made plans to attend K's graduation from her GED class. Because defendant did not approve of K being educated outside the home, K and A did not intend to inform him of the graduation. Another sister, J, overheard A discussing this with K and told defendant that A intended to attend a "party." Defendant became upset and informed A that she was not allowed to attend the "party." A confronted J about her telling defendant about her plans, and the two argued. Defendant overheard the argument and decided that A needed to be disciplined for disrespecting her sister and him. Defendant spent the next several days contemplating what type of punishment to inflict on A, during which time defendant told A that he could "do anything he wanted to" her and that she "didn't deserve to live."

Defendant kept a board next to the front door. He regularly hit his children with the board in order to discipline them. This practice was referred to as "boarding" by the family members. The child was required to stand still, with

hands at his or her sides, while defendant inflicted a predetermined number of blows to the child's buttocks and the back of the child's legs. On June 18, 2007, defendant decided that A should be punished by being boarded 20 times. According to A, defendant used the board like a baseball bat, swinging it at her with "all his muscle."[1] He began by striking her buttocks, and each blow was harder than the last and lower on her body. By the time defendant reached the fifteenth blow, A was screaming and had dropped to the floor. Defendant flipped her over and continued to inflict blows on her legs until he had reached 20 blows.

Shortly thereafter, A told J that A needed to care for the animals outside and, after leaving the house, she fled to a neighboring business where she received assistance in calling her sister K and in contacting the police. Police and Department of Human Services workers documented A's injuries, and photographs of the injuries were introduced into evidence at trial. A testified that the bruises took approximately one month to heal and that she continued to experience pain from the injuries for approximately six months.

To explain the context of the jury's question to the court concerning the second-degree assault charge, we describe in some detail the parties' arguments and the jury instructions at trial. To prove the crime of second-degree assault as alleged here, the state was required to show that defendant "[i]ntentionally or knowingly cause[d] physical injury to another by means of a * * * dangerous weapon." ORS 163.175(1)(b). The parties agreed that the state's evidence showed "physical injury." The contested issues at trial were (1) defendant's justification defense;[2] and (2) whether the board that defendant used to inflict the physical injuries on A was a "dangerous weapon." ORS 161.015(1) defines dangerous weapon as any weapon or instrument "which under the circumstances in which it is used, attempted to be used or

---

[1] Defendant weighed approximately 250 pounds at the time of the crime. A weighed approximately 90 pounds.

[2] ORS 161.205(1) provides, in part, that what would otherwise constitute an offense is justifiable and not criminal in some circumstances, and includes a provision that a "parent * * * of a minor * * * may use reasonable physical force upon such minor * * * when and to the extent the person reasonably believes it necessary to maintain discipline or to promote the welfare of the minor."

threatened to be used, is readily capable of causing death or serious physical injury." "Serious physical injury" is defined as "physical injury which creates a substantial risk of death or which causes serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ." ORS 161.015(8). Thus, the second issue required the jury to determine whether the board that defendant used on A, when used in the manner that defendant used it, was readily capable of causing serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of a bodily organ. In his opening statement, defense counsel explained this to the jury, and the court intervened to read to the jury the uniform jury instructions on "dangerous or deadly weapon," "physical injury," and "serious physical injury."

In closing argument, the prosecutor told the jury:

"You must also find that the injury was caused by means of a dangerous weapon, and the judge will instruct you, and you've heard already what dangerous weapon means, which is any instrument under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or serious injury. And the state submits to you that the way this board was used on June 18th, 2007, it became a dangerous weapon."

The prosecutor acknowledged that the board had not, in fact, caused serious physical injury, but urged that "the State doesn't need to prove that it does. It just has to be readily capable of causing such things the way it's being used." In his closing argument, defense counsel told the jury that he was not arguing that the boarding was not done "knowingly" or that it did not cause "physical injury." Rather, he advanced a "reasonable discipline defense," and he argued that the state had not established that the board was "readily capable of causing death or serious physical injury." Defense counsel then read the definition of "serious physical injury" to the jury. In rebuttal, the prosecutor reiterated that the state "does not need to prove that it actually did cause serious physical injury * * * [T]he state has to prove it caused a physical injury, which again there's no dispute that it did."

The trial court instructed the jury on the elements of second-degree assault as pleaded in this case, as well as on the justification defense raised by defendant, and again provided the jury with uniform instructions on the definition of "dangerous weapon" and "serious physical injury." The court further instructed the jury on fourth-degree assault as a lesser-included offense of the crime of second-degree assault, noting that "Assault in the Second Degree required proof the defendant used a dangerous weapon during the commission of the crime; Assault in the Fourth Degree does not require the proof of the use of a dangerous weapon."[3]

After it had deliberated for several hours, the jury sent the following question to the court: "Jury Question: Does Assault II need to be physical injury or serious physical injury?" The court consulted with the parties, and they considered three alternative responses to the jury: To simply tell them that the offense of second-degree assault requires physical injury; to send them the jury instruction describing the elements of Assault II; or to send them the jury instructions describing the elements of Assault II, the definition of dangerous weapon, and the definition of serious physical injury. The state pointed out that giving the jury an instruction on "serious physical injury" without an accompanying instruction on "physical injury" would risk confusing the jury. The court ultimately concluded that the jury's question related to the injury, not the weapon, and it instructed the jury that "Assault II requires that you find that [defendant] knowingly caused physical injury to [A] by means of a dangerous weapon." The court did not reinstruct on the definition of "dangerous weapon" as one readily capable of causing "serious physical injury."

Defendant argues on appeal that, in so reinstructing the jury, the trial court committed prejudicial error, because the reinstruction "could have led the jury to believe it could convict defendant of second-degree assault without determining whether his conduct was readily capable of causing serious physical injury." We reframe the issue more precisely to match the issue before the trial court: Was the trial court

---

[3] The court did not provide the jury with written copies of the instructions. It did, however, provide the jury with a recording of the instructions.

required to answer the jury's question not merely by explaining that second-degree assault as alleged required physical injury by means of a dangerous weapon, but also by reinstructing the jury as to the definition of dangerous weapon?

We review the trial court's ruling regarding reinstruction of the jury for abuse of discretion. *State v. Thompson*, 328 Or 248, 971 P2d 879, *cert den*, 527 US 1042 (1999). The court explained this standard in *Thompson*:

> "For an instruction to constitute reversible error, it must have prejudiced the aggrieved party when the instructions are considered as a whole. *Martini v. Beaverton Ins. Agency, Inc.*, 314 Or 200, 211, 838 P2d 1061 (1992). This court has held that 'cases should not be reversed upon instructions, despite technical imperfections, unless the appellate court can fairly say that the instruction probably created an erroneous impression of the law in the minds of the jurymen which affected the outcome of the case.' *Waterway Terminals v. P. S. Lord*, 256 Or 361, 370, 474 P2d 309 (1970)."

328 Or at 266. Defendant faces a difficult task in this case, because he does not argue that the challenged reinstruction contained erroneous information. Rather, he implicitly acknowledges that the jury *had* been correctly instructed, not only as to the elements of second-degree assault that apply in this case, but also with respect to the definitions of "dangerous weapon" and "serious physical injury." That is, defendant does not argue that, "as a whole," *id.*, the court's instructions failed to provide the correct information to the jury about the elements of the crime or the definitions of those elements.

Instead, defendant's sole argument is that, because it was incomplete, the reinstruction could have created an erroneous impression of the law. The only authority that defendant cites in support of that proposition is *Jones v. Baldwin*, 163 Or App 507, 990 P2d 345 (1999). As explained below, *Jones* does not support defendant's argument that the court's reinstruction constituted an abuse of discretion in this case.

In *Jones*, after the trial court had instructed the jury on the elements of conspiracy to commit murder, the jury

asked the following question: "Is the defendant guilty of conspiracy if he did indeed make a plan with others to kill *or* must it be proved that the defendant was definitely serious, and fully intended to go through with the plan?" *Id.* at 519. (Emphasis in *Jones.*) The court responded: "Your question is a two-part question. The answer to part one is yes *and* the answer to part two is yes." *Id.* (emphasis in *Jones*). After noting that the question was asked in the disjunctive yet answered in the conjunctive, we held:

> "An answer, such as the one at issue here, that affirms each of two mutually exclusive alternatives is nonsensical. We cannot pretend to know how jurors made sense of that illogical answer, and it is quite probable that different jurors understood the answer differently."

*Id.* at 511. In determining that the post-conviction petitioner in that case was prejudiced because his attorney had failed to object to the flawed reinstruction of the jury, we relied on evidence presented in the post-conviction trial that, after reaching their verdict, jurors had been videotaped by local news sources "complain[ing] that they were confused by the trial court's instructions and * * * that they now believed, based on the law of conspiracy, that the result should have been different." *Id.* at 513. Although we did not phrase it precisely in those terms, we concluded that the illogical jury reinstruction "probably created an erroneous impression of the law" in the minds of the jurors, *Waterway Terminals*, 256 Or at 370, and, thus, the petitioner was entitled to relief.

The reinstruction in the present case does not contain a flaw such as the one that we identified in *Jones*. We reiterate the question asked by the jury: "Does Assault II need to be physical injury or serious physical injury?" and the answer: "Assault II requires that you find that [defendant] knowingly caused physical injury to [A] by means of a dangerous weapon." Unlike in *Jones*, the question and answer here match up—the question concerned what type of injury must be proved to establish the type of second-degree assault with which defendant was charged. The court answered the jury's question. Moreover, the answer that the court gave was correct. Defendant's only contention is that the court

should have added more by repeating the definition of dangerous weapon, including the requirement that a dangerous weapon must be readily capable of inflicting serious physical injury. We have no doubt that the court *could have* offered additional instructions in this circumstance without abusing its discretion. We cannot say, however, that the court's reinstruction—which, as noted, not only specified the degree of injury that the state was required to prove but also specified that the injury must have been caused by means of a dangerous weapon—was such that it "probably created an erroneous impression of the law in the minds of the [jurors] which affected the outcome of the case." *Waterway Terminals*, 256 Or at 370.

As discussed, in evaluating this type of assignment of error, we consider the instructions as a whole. *Thompson*, 328 Or at 266. The jury was properly instructed about the elements of assault in the second degree, about the definition of dangerous weapon, and the necessity of considering whether the weapon was readily capable of inflicting serious physical injury. Moreover, in conjunction with the second-degree assault charge, the court instructed the jury that, if it did not find that a dangerous weapon was used, it could convict defendant on the lesser-included offense of fourth-degree assault, which "does not require the proof of the use of a dangerous weapon." Those instructions were thorough, and there was nothing confusing or ambiguous about them. When the jury asked its question, it was reinstructed about the specific element to which its question related, and the reinstruction was both consistent with the original instruction, and it was legally correct. Because the reinstruction probably did not create an erroneous impression of the law in the minds of the jurors, the trial court did not abuse its discretion by giving it.

Affirmed.