Submitted September 27, 2012, affirmed May 30, 2013

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

WILLIAM DAVID STUBBS,
*Defendant-Appellant.*

Washington County Circuit Court
D094960T; A145851

304 P3d 40

Peter Gartlan, Chief Defender, and Erik Blumenthal, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

John R. Kroger, Attorney General, Anna M. Joyce, Solicitor General, and Joanna L. Jenkins, Assistant Attorney General, filed the brief for respondent.

Before Wollheim, Presiding Judge, and Nakamoto, Judge, and Edmonds, Senior Judge.

NAKAMOTO, J.

## NAKAMOTO, J.

Defendant was convicted after a jury trial of one count of driving under the influence of intoxicants (DUII), a misdemeanor. ORS 813.010.[1] After the court gave its jury instructions but before deliberations had begun, a juror asked the court whether Ambien, a central nervous system depressant, was a controlled substance. In response, the court did not answer the juror's question and instead indicated that the jury was to proceed to deliberations, having heard all the evidence and the jury instructions. On appeal, defendant assigns error to the trial court's failure to instruct the jury further that defendant's Ambien use was irrelevant to the case. First, defendant asserts that the state prosecuted him on the theory that he had used narcotics and was impaired by narcotics, not Ambien. Second, defendant suggests that, although there was evidence that Ambien is a controlled substance, the state failed to establish, as a matter of law, that defendant was impaired by Ambien. Third, defendant argues that, given the state's theory and the evidence at trial, the trial court was required to instruct the jury that Ambien was not a relevant controlled substance when it became clear that the jury might consider defendant's use of Ambien as a basis upon which to convict him. For the following reasons, we affirm.

We take the following facts from the record. Officer Hyson was on patrol in the morning when he saw defendant drive through an intersection without stopping at a stop sign. After Hyson pulled over defendant, he asked for defendant's license, registration, and proof of insurance. After Hyson repeated his request for the three documents, defendant appeared to have difficulty retrieving his license from his wallet. Hyson noticed that defendant's speech was slow and slightly slurred.

---

[1] ORS 813.010(1) provides, in part:

"A person commits the offense of driving while under the influence of intoxicants if the person drives a vehicle while the person:

"* * * * *

"(b) Is under the influence of intoxicating liquor, a controlled substance or an inhalant[.]"

Shortly after Hyson stopped defendant, he became concerned that defendant was having medical problems or was impaired by medication. After denying any immediate medical problems, defendant agreed to take field sobriety tests. When defendant got out of his car, he swayed and stumbled such that Hyson had to place his hand on defendant's arm until defendant was able to regain his balance. Hyson then administered three field sobriety tests to defendant. Hyson first administered the horizontal gaze nystagmus (HGN) test, an eye examination developed to detect intoxication. Hyson observed nystagmus and six out of the six possible "clues" indicating intoxication. During the HGN test, Hyson did not note the size of defendant's pupils. For the "walk-and-turn" test, Hyson asked defendant to walk nine steps in a straight line in a heel-to-toe fashion and then return to the starting position. Defendant was unable to maintain the starting position, needing help from Hyson because he was swaying and stumbling, and then defendant could not walk in a straight line and almost fell when turning. Last, Hyson requested that defendant perform the "one-leg stand" test. Hyson instructed defendant to stand feet together, lift one foot at least six inches off the ground, and remain in that position for approximately 30 seconds. Defendant stated that no one could perform that test, and when defendant lifted his foot off the ground, he began to sway and stumble sideways. Hyson discontinued the test and arrested defendant for DUII.

At the jail, defendant agreed to provide a urine sample. Bessett, a criminalist at the Oregon State Police Crime Lab, analyzed defendant's urine sample and prepared a written report. In his written report, Bessett confirmed the following substances present in defendant's urine sample:

"Methadone, a Schedule II controlled substance and its metabolite EDDP[.]

"Oxycodone (Oxycontin, Percodan), a Schedule II controlled substance[.]

"Morphine, a Schedule II controlled substance and a metabolite of several opiates[.]

"Citalopram (Celexa) and/or escitalopram (Lexapro) both prescription controlled anti-depressants[.]"

(Bullet points omitted.) Several days later, the state filed a traffic complaint for one count of DUII. The traffic complaint alleged that defendant was under the influence of "controlled substances" but did not specify which ones.

Bessett testified at trial. Before explaining the findings in his written report, he described his training. In part, he said that he had had training in drug classifications, and he described central nervous system depressants, such as Valium or Ambien, as an example of a drug classification. He also described the effects of a central nervous system depressant: it lowers a person's heart rate, lowers a person's breathing rate, and makes the person feel more relaxed.

With regard to the substances listed in Bessett's report that were confirmed to be present in defendant's urine, Bessett explained that methadone is a Schedule II controlled substance that is in the category of narcotic analgesics, which are considered depressants. Side effects of narcotic analgesics, he testified, may include confusion, disorientation, drowsiness, and mental clouding, and so narcotic analgesics may impair mental and physical capabilities. He explained that oxycodone, the active ingredient in Oxycontin and Percodan, and morphine are Schedule II controlled substances too and also are narcotic analgesics with side effects similar to methadone.[2] Bessett explained the scheduling system for drugs and gave examples of drugs that would fall in each schedule, from Schedule I to Schedule V. Bessett's example of a Schedule IV drug was Ambien. Bessett testified that methadone, oxycodone, and morphine are detectible in urine from two hours to two days after use. On cross-examination, Bessett testified that, generally, people under the influence of narcotics have "pinprick pupils" and do not display nystagmus when given the HGN test.

---

[2] Bessett also described citalopram and escitalopram as prescription antidepressants, but noted that they did not have any relevant side effects alone or combined with other drugs. Defendant's counsel moved to strike the evidence of citalopram and escitalopram as irrelevant because those drugs are not controlled substances and do not have any additive effects when combined with other drugs. The court sustained defendant's motion and excluded any further discussion of them.

To some extent, Bessett testified regarding defendant's possible use of Ambien. He explained during direct examination that he was required to perform two tests on a urine sample: a screening test and a confirmation test. The screening test identifies the presence of a drug and its general type, *e.g.*, narcotic. The next test, the confirming test, identifies the exact drug that is present in the urine sample. He then stated that, although the screening test had identified the presence of two other substances, Ambien and 7-amino Clonazepam, he was unable to find those again on the confirming test. During cross-examination, Bessett agreed that he was "not offering testimony that those other drugs [Ambien and 7-amino Clonazepam] were actually present because [he] didn't confirm them." Defense counsel then questioned Bessett regarding the narcotic analgesics that were confirmed to have been found in defendant's urine sample.

In her redirect examination of Bessett, however, the prosecutor returned to the topic of Ambien. Bessett testified that, although narcotic analgesics do not typically cause nystagmus, which defendant exhibited during the HGN test, central nervous system depressants, such as Ambien, Clonazepam, and other drugs, do cause nystagmus. The prosecutor then asked, "[D]id you find any of those drugs present?" Defense counsel objected on the ground that the question had been "asked and answered" and argued that Bessett had already said that he could not confirm them or offer evidence that those types of drugs were actually present. The court overruled the objection, and Bessett testified:

"I did detect those drugs—two drugs, Ambien and a drug called 7-Amino Clonazepam, which is a—like that EEDP, it's a breakdown product of Clonazepam. And those two drugs are in the category of central nervous system depressants."

Defendant also testified at trial. He stated that he was prescribed the substances found in his urine sample to treat some of his medical issues but denied taking narcotics the morning Hyson arrested him. Defendant explained that he routinely takes his medication after lunch in the mid-afternoon and he had not taken any medication the morning

that he was pulled over. However, defendant volunteered that he might have taken Ambien: "I think at the time the—the ticket was written, I might have taken Ambien the night before[.]"

In closing argument, the prosecutor called the jury's attention to Bessett's testimony that Ambien would explain the nystagmus that Hyson observed during the HGN test. However, the prosecutor focused on the narcotics and argued that the testing showed that, just as defendant admitted, he used methadone, oxycodone, and morphine every day and that, given Hyson's observations of defendant's behavior, there was ample evidence to conclude that defendant was "impaired by these drugs when he was driving." Defendant's counsel argued that the state had presented a case of speculation because Hyson observed nystagmus and there was no evidence of constricted pupils, which contradicted the state's theory that defendant was under the influence of narcotics.

After closing arguments, the trial court instructed the jury that, to convict defendant, it needed to find that defendant drove while under the influence of a controlled substance. The trial court also instructed the jury, with the agreement of the parties, that "as a matter of law Methadone, Oxycodone, Percodan, and Morphine are all controlled substances."

After the court instructed the jury but before the jurors left the courtroom to begin deliberations, a juror asked the court a question regarding defendant's Ambien use:

"JUROR: Okay. The case revolves around the use of Ambien. I have personal experience because I *** was prescribed that for a sleeping disorder a number of years ago, and my question revolves around—that we're talking about the narcotics, the—the three narcotics, and my question is, is Ambien considered a narcotic in—or a controlled substance in this particular case. We didn't receive testimony one way or another and I think that might factor into my decision."

In response to the juror's question, the court told the jurors that they had heard all of the evidence and jury instructions

in the case and explained that the court would not comment on the evidence presented to the jury:

"THE COURT: Okay. Well, here's what I would tell you, is, is that all of the evidence is the evidence that you've heard and all of the instructions are the ones that I've given you. And this is one of the many reasons why we have more than one person as a jury to decide this. And even though that's how you categorize it that way, you may find that your jurors will assist you in thinking of it in a different way or the same way, but help you decide that. I don't know.

"But all of this falls within the category of what the jury decides. I'm not the one that puts on the evidence and I'm not the one that gets to comment on it. That's something [that] is perhaps for you to ask your fellow jurors, and one of the things that comes up. But, again, I'm not even saying that."

After the jury left, defendant objected to the court's response to the juror's question and contended that the court should instruct the jury that Ambien was not relevant to the case:

"[DEFENSE COUNSEL]: With regard to the juror's question, I—I think it—had that been submitted formally, I'm going to treat it as such, even though it was an oral question not a written question, that *I think [that] the appropriate instruction of the Court would be that Ambien's not relevant to the case* (indiscernible). But there was—the State has charged controlled substance, to-wit: Ambien— it's not Ambien, excuse me, the various narcotics that were listed."

(Emphasis added.) The court determined that the juror's question related to a factual matter for the jury to decide.

Later, during deliberations, the jury told the bailiff that they were split and submitted a written question to the court. The trial judge called the prosecutor and defense counsel back to the courtroom and read them the jury question: "Does the charge DUII *** mean *** under the influence *** or *** required impairment to drive ***?" (Internal quotation marks omitted.) After hearing from counsel for the parties, the court reinstructed the jury as to the elements of DUII and restated that

"the following substances are controlled substances. So, in other words, in addition to anything you heard about this, in terms of evidence, it is also true as a matter of law that Methadone, Oxycodone, Percodan and Morphine are controlled substances as a matter of law."

The jury then found defendant guilty of DUII, and the trial court sentenced defendant to two years of enhanced bench probation, subject to general and special conditions.

On appeal, defendant assigns error to the trial court's failure to instruct the jury that defendant's Ambien use was not a relevant controlled substance for which to convict defendant, relying on a three-step argument. First, defendant asserts that the state prosecuted him on the theory that he had used narcotics and was impaired by narcotics, not Ambien. Second, in a related vein, defendant contends that, although there was evidence that Ambien is a controlled substance, as a matter of law, the state failed to establish that defendant was impaired by Ambien because there was no evidence as to the effects Ambien has on a person's ability to drive, the amount of Ambien present in defendant's urine sample, or the amount of Ambien that could impair a person's driving. Third, defendant argues that, given the state's theory and the evidence at trial, the trial court was required to instruct the jury that Ambien was not a relevant controlled substance when it became clear that the jury might consider defendant's use of Ambien as a basis upon which to convict him. In defendant's view, his requested jury instruction was not an impermissible comment on the evidence.

The state argues that defendant has preserved only a narrow issue for appeal: whether the court was required to instruct the jury that Ambien was not relevant to the case. The state points out that, in response to the juror's question, defendant requested that the court instruct the jury that "Ambien's not relevant to the case[.]" The state contends that defendant is now arguing points that he did not preserve for appeal, namely, that the court's instruction to the jury was misleading and that the evidence relating to Ambien was insufficient for a jury to have found defendant guilty of DUII. We therefore begin our analysis by addressing preservation.

To preserve an issue for appeal, a party's explanation must be "specific enough to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted." *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000). As the state acknowledges, defendant properly preserved the issue of whether the trial court was required to instruct the jury that Ambien was irrelevant to the case; defendant specifically requested that the court instruct the jury that Ambien was irrelevant. We also note that defendant objected to the court's response to the jury's question and requested the Ambien instruction because the state had accused defendant of being under the influence of "the various narcotics that were listed." That was sufficient to alert the state and the court of his position that the state's theory could not change from narcotics use to Ambien use. We also conclude that defendant's additional arguments—that the court's instruction to the jury was misleading and that the evidence relating to Ambien was insufficient for a jury to convict him—were preserved insofar as they support his argument that the court should have instructed the jury that Ambien was not a relevant controlled substance.

We turn, then, to the merits of defendant's assignment of error—whether the court was required to instruct the jury that evidence of Ambien was irrelevant to convict defendant of DUII. As previously noted, defendant argues that his requested jury instruction—that Ambien was not relevant— was a correct statement of the law and, therefore, was not an impermissible comment on the evidence. The state argues that the jury was entitled to rely on the Ambien evidence admitted in the case to reach its verdict.

We begin our analysis of the merits by addressing the applicable standard of review. Although the parties agree that our standard of review is for legal error, they differ over the legal question presented. Defendant cites *Jones v. Baldwin*, 163 Or App 507, 511-12, 990 P2d 345 (1999), and asserts that we must determine whether the trial court's answer to the juror's question could have misled the jury.[3] Defendant

---

[3] We conclude that *Jones* is inapposite to this case. In *Jones*, the jury submitted a written question during deliberations regarding the elements of conspiracy to commit murder: "Is the defendant guilty of conspiracy if he did indeed make a plan

contends that the jury was misled because "Ambien was not a valid controlled substance from which the jury could find that defendant committed DUII." The state, however, cites *State v. Maciel-Cortes*, 231 Or App 302, 218 P3d 900 (2009), and contends that we must determine whether defendant's additional requested jury instruction—that Ambien is irrelevant to the case—constituted an improper comment on the evidence. The disputed question the parties present to us relates to a factual issue that was raised by evidence presented at trial, namely, defendant's use of Ambien. We therefore agree with the state that *Maciel-Cortes* governs. We review whether a jury instruction—requested or given—is a comment on the evidence for legal error. *Maciel-Cortes*, 231 Or App at 305 (citing *State v. Blanchard*, 165 Or App 127, 130, 995 P2d 1200, *rev den*, 331 Or 429 (2000)).

Under ORCP 59 E, a trial court "shall not instruct" the jury "with respect to matters of fact" or comment on the evidence. *See* ORS 136.330(1) (ORCP 59 is applicable in criminal cases). "A court impermissibly comments on the evidence when it gives a jury instruction that tells the jury how specific evidence relates to a particular legal issue." *State v. Hayward*, 327 Or 397, 410-11, 963 P2d 667 (1998). Defendant argues that his requested instruction was not an impermissible comment on the evidence because Ambien did not relate to any legal issue in the case. Our resolution of the issue is driven by two related, but separate conclusions: (1) defendant did not follow the proper procedure to exclude evidence of Ambien from the record, and (2) his requested jury instruction was not legally correct.

First, defendant's request for a jury instruction was not the proper procedure to exclude evidence already in the record. The state presented evidence related to Ambien multiple times during the trial. Bessett testified that, in his screening test, he detected, but was unable to confirm, that

with others to kill *or* must it be proved that the defendant was definitely serious, and fully intended to go through with the plan?" 163 Or App at 510 (emphasis in original). The jury's question was submitted in the disjunctive, but the trial court answered, "Yes" to both questions. *Id.* We determined that the trial court's instruction was illogical and, therefore, prejudicial. *Id.* at 511-13. In this case, however, defendant is not arguing that the trial court's response to the juror's question was incorrect. Instead, defendant contends that the trial court was required to give his requested jury instruction—that Ambien was not relevant.

Ambien was a substance present in defendant's urine sample. Bessett stated that Ambien is a Schedule IV central nervous system depressant that, generally, lowers a person's heart rate, lowers a person's breathing rate, and makes the person feel more relaxed. Bessett also explained that drugs like Ambien can cause nystagmus, which Hyson observed when he administered the HGN test.

At no point during the state's presentation of evidence at trial did defendant try to inform the court that the state's evidence regarding Ambien should be excluded based on relevance grounds; defendant did not object to or move to strike the state's evidence of defendant's Ambien use or its effects. *See State v. Keller*, 315 Or 273, 283, 844 P2d 195 (1993) (citing OEC 103(1)(a) and noting that an objection is considered "timely" if it is made when the offered evidence is known to the opposing party and when the trial court has the basis to properly assess its admissibility). Nor did defendant request an instruction limiting the state's evidence of Ambien for the purpose of explaining the schedules of controlled substances. *See* OEC 105 ("When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly."). Moreover, when defendant testified, he admitted that he "might have taken an Ambien" the night before he was pulled over for DUII.

Defendant could have taken steps to exclude or to limit any testimony regarding Ambien during the evidentiary phase of the trial. Notably, defendant's counsel did move to strike the state's evidence of defendant's use of the antidepressants citalopram and escitalopram, and their effects, as irrelevant, and the trial court excluded testimony concerning those drugs. Defendant's counsel could have moved to strike the evidence concerning Ambien as well, or could have requested a limiting instruction, and he should have done so before defendant testified about his Ambien use. In this case, however, after the evidentiary record was closed, all of the evidence concerning Ambien was in the record. Regardless of whether the evidence of Ambien

was actually relevant to the case, the jury was entitled to consider that evidence because it had been admitted without objection from either party. Thus, defendant was in no position to challenge that evidence as irrelevant for the first time through a proposed peremptory jury instruction.

Second, we conclude that defendant's requested jury instruction—that Ambien is "not relevant to the case"—was not a correct statement of the law. *See Williams v. Philip Morris Inc.*, 344 Or 45, 56, 176 P3d 1255 (2008) (stating the principle that there is no error in a trial court's refusal to give a proposed jury instruction if that instruction is not legally correct). For defendant's requested jury instruction to be legally correct, we would have to conclude that, as a matter of law, Ambien was not relevant for the purpose of convicting defendant of DUII. As previously explained, both the state and defendant presented evidence of Ambien. The state presented evidence that (1) during the HGN test, defendant displayed nystagmus and, unlike narcotics, central nervous system depressants, like Ambien, cause nystagmus; and (2) Ambien is a controlled substance. Apparently in an attempt to contradict the state's evidence of his impairment by narcotics, defendant testified that he might have taken an Ambien, consistent with his display of nystagmus. Defendant's testimony about his Ambien use, and the other evidence concerning Ambien, was relevant to explain the observation of nystagmus and to the question of whether defendant drove while under the influence of "controlled substances." If the court had instructed the jury that Ambien was irrelevant, that instruction would have been legally incorrect. Accordingly, we conclude that the trial court did not err when it did not give defendant's requested jury instruction and affirm the judgment of conviction.

Affirmed.